## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

PHILLIP WILSON                                                                          PLAINTIFF

VS.                                         3:04CV000206-WRW

WAL-MART STORES, INC.                                                          DEFENDANT

### ORDER

Pending is Defendant's Motion for Summary Judgment.[1]  The Plaintiff has responded.[2]

The Plaintiff filed this Title VII action alleging that Defendant engaged in discriminatory

employment practices because of his religious beliefs and in retaliation for his complaints.

For the reasons stated below, the Motion for Summary Judgment is GRANTED.

## I.  Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact,

so that the dispute may be decided on purely legal grounds.[3]  The Supreme Court has

established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[4]

The Eighth Circuit has cautioned that summary judgment is an extreme remedy that

should only be granted when the movant has established a right to the judgment beyond

---

[1]Doc. No. 17.

[2]Doc. No. 25.

[3]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

controversy.[5] Nevertheless, summary judgment promotes judicial economy by preventing

trial when no genuine issue of fact remains.[6] I must view the facts in the light most favorable

to the party opposing the motion.[7] The Eighth Circuit has also set out the burden of the

parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[8]

Only disputes over facts that may affect the outcome of the suit under governing law

will properly preclude the entry of summary judgment.[9]

## II. Discussion

## A. Background:

In 1991, Plaintiff started working for Wal-Mart as an assistant pharmacist, and in

1998, was promoted to his current position, pharmacy manager. The trouble began in 1999

when Wal-Mart opened its pharmacies on Sunday. The Plaintiff is a Baptist, and believes

that working on Sunday is forbidden by the Bible. The Plaintiff alleges that because he

---

[5]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[6]*Id.* at 728.

[7]*Id.* at 727-28.

[8]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[9]*Anderson*, 477 U.S. at 248.

refused Sunday work, his relationship with Wal-Mart became strained and his opportunity for promotion was compromised.

Plaintiff states that in 1999, his district manager, Mr. Dwayne Lunbeck, told him that his refusal to work Sunday would label him an "insubordinate associate."[10]  In spite of the label, Plaintiff was never terminated or demoted.  However, he alleges that Mr. Lunbeck warned that he would not be promoted.[11]  In 2001, Wal-Mart created a "Rising Star" program for associates identified as "future leaders."[12]  The Plaintiff was not invited to join.[13]  In 2002, another associate, Mr. Jeremy Jackson, a member of the "Rising Star" program, was promoted to district manager.   The Plaintiff believes that had he been a "Rising Star," he would have been promoted to district manager.[14]

The Plaintiff also alleges that he was embarrassed and made to feel inferior because of his refusal to work on Sunday, and that he was continually made to feel that his job was in jeopardy.[15]  Finally, Plaintiff contends that after filing his EEOC charge, his performance evaluations fell, and, consequently, his wage increases decreased.

## B.  Analysis:

The Plaintiff brings this action based on four separate discrimination claims: disparate treatment, retaliation, hostile work-environment, and failure to accommodate.  The Plaintiff also requests equitable relief to mitigate the current Sunday work policies at Wal-Mart.

---

[10]Plaintiff Ex. 7, Declaration of Phillip Wilson,  ¶ 5.

[11]Plaintiff Ex. 7, Declaration of Phililp Wilson, ¶ 6.

[12]Plaintiff Ex. 4, p. 1.

[13]Plaintiff Ex. 7, Excerpts from Wilson Deposition, pp. 50-53.

[14]Plaintiff Ex. 7, Declaration of Phillip Wilson, ¶ 8.

[15]Plaintiff Ex. 7, Declaration of Phillip Wilson, ¶ 17.

### 1. Disparate Treatment:

A disparate treatment case based on religion requires a plaintiff to show that he was treated worse than others because of his religious beliefs.[16]   The plaintiff must show that he is a member of a protected class and must compare his treatment to that of a similarly situated member of a non-protected class.[17]

To establish a *prima facie* case of disparate treatment, Plaintiff must also establish: (1) he was qualified for his position and performed his duties adequately; and (2) he suffered an adverse employment action under circumstances that raise an inference that unlawful discrimination was involved.[18]   "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard."[19]   Performance ratings that have a potential negative impact on promotion do not constitute an adverse employment action unless the rating actually led to the denial of a promotion.[20]   A decision not to raise a salary is not an adverse employment action where, as here, the evidence shows that the employee received regular salary increases, and his wages were not diminished.[21]

In this case, Plaintiff compares himself with Mr. Jackson, who was willing to work Sunday.  Plaintiff asserts that an inference of discrimination is shown by Defendant's choice

---

[16]*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 (1977).

[17]*Hervey v. City of Little Rock*, 787 F.2d 1223, 1231 (8th Cir. 1986).

[18]*Habib v. NationsBank*, 279 F.3d 563, 566 (8th Cir. 2001).

[19] *Sallis v. University of Minnesota*, 408 F.3d 470, 476 (8th Cir. 2005).

[20]*Turner v. Gonzales*, 421 F.3d 688, (8th Cir. 2005).

[21]*Tademe v. St. Cloud State University*, 328 F.3d 982, 992 (8th Cir. 2003).

of Mr. Jackson as a "Rising Star."  Despite the fact that a member of a non-protected class was chosen for the program,  Plaintiff's exclusion from the "Rising Star" program does not constitute a tangible adverse action.  The evidence shows that individuals included in the program did not receive any increase in benefits or wages, and there is no evidence that inclusion in the program guaranteed promotion.[22] One must guess that being selected for the program (now defunct) had some benefit, but there was no evidence in the record on this point.  The Plaintiff could not identify one tangible benefit connected to the program.[23]  So, with respect to exclusion from "Rising Star," the Plaintiff fails to make out a *prima facie* case, because he cannot demonstrate an adverse employment action.

Loss of  promotion meets the definition of adverse action, and the fact that the promotion was given to a member of a non-protected class, could be sufficient evidence to establish a *prima facie* case of disparate treatment.  However,  Mr. Jackson applied for the promotion, and Plaintiff did not.  Plaintiff admits that he did not apply for the promotion,[24]and this admission is fatal to the claim.  Part of the *prima facie* case in a "failure to promote" case is that a plaintiff must apply for the position and be rejected.[25]  A plaintiff will be excused from the typical "application" requirement if he can show that the promotion process was informal and subjective, or vague and secretive.[26]  The Plaintiff made no such showing.  There

---

[22]Defendant Ex. E, p. 91.

[23]Defendant Ex. D, p. 43.

[24]Defendant Ex. D, pp. 71-72.

[25]*Pope v. ESA Services*, 406 F.3d 1001, 1007 (8th Cir. 2005)(holding that in a failure-to-promote case a plaintiff must show: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) a similarly-situated candidate, not part of the protected group, was hired for the position instead.).

[26]*Lockridge v. Board of Trustees of the University of Arkansas*, 315 F.3d 1005, 1010 (8th Cir. 2003).

is no evidence that anyone other than the applicants were considered for the promotion.

Notice of the job opening was posted on a website available  to all associates.[27] This does not

create an inference of a secretive promotion process.  So, Plaintiff fails to make out a *prima*

*facie* case on allegations involving the denial of a promotion for district manager.  The

disparate treatment claim falls short of the mark, and the same is true with respect to the

retaliation claim.

### 2.  Retaliation:

To establish a *prima facie* case of retaliation, Plaintiff must show that he engaged in

protected conduct, that he suffered an adverse employment action, and that the adverse action

was causally linked to the protected conduct.[28]   Plaintiff filed his first EEOC charge in

December 2002.   Plaintiff alleges that after he filed the first charge, he was told in August

2003 that he would be required to begin working Sunday.   The Plaintiff also alleges that his

employment evaluations and wage increases dropped because of his complaints.[29]

With respect to the lower evaluations, Plaintiff cannot demonstrate an adverse

employment action.  Poor performance ratings do not constitute an adverse action, unless a

plaintiff can show a clear link to a detrimental result.[30] "An unfavorable evaluation is

actionable only where the employer subsequently uses the evaluation as a basis to

detrimentally alter the terms or conditions of the recipient's employment."[31]  The Plaintiff has

not presented sufficient evidence to raise an inference that the drop in his performance

---

[27]Defendant Ex. A.

[28]*Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004).

[29]Doc. No. 1, Ex. B; Plaintiff Ex. 7, Declaration Phillip Wilson, ¶15, ¶ 16.

[30]*Spears v. Missouri Department of Correction & Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000).

[31]*Id.*

evaluations altered his employment condition.  The Plaintiff maintains that the lower

evaluations meant lower wage increases.  Plaintiff's salary was not decreased; instead, the

record reflects that he continued to receive salary increases, and is one of the highest paid

managers in the district.[32]  This does not support an inference that Plaintiff was the victim of

discriminatory action.[33]

Even assuming that Plaintiff presented sufficient evidence that the lower evaluations

had a tangible impact on his working conditions, there is not enough evidence connecting the

lower evaluations to his EEOC charge.   The Plaintiff's lower evaluations corresponded with a

change in district managers.  So, the lower evaluations could have as easily resulted from a

changing of the guard as from retaliation for filing an EEOC charge.

With respect to the ultimatum given to Plaintiff in August 2003, he was never required

to work on Sunday.  So, again,  there is no adverse action.  Even assuming it was adverse,

there is no basis for a connection between the EEOC charge and the ultimatum. "Generally,

more than a temporal connection between the protected conduct and the adverse employment

action is required to present a genuine factual issue on retaliation."[34] In this case, there is an

eight month lapse in time between the two events -- this is insufficient for an inference that

there was a causal link.[35]  Again, there is no evidence creating a genuine dispute on Plaintiff's

---

[32]Defendant Ex. B.

[33]*Tademe*, 328 F.3d at 992 (holding that a decision not to raise a plaintiff's salary was not adverse because the salary was not diminished or decreased).

[34]*Scroggins v. University of Minnesota*, 221 F.3d 1042, 1045 (8th Cir. 2000).

[35]*Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001)(holding that a seven-month time lapse between the protected activity and the alleged retaliatory act is, without more, too long for the incidents to be temporally, and therefore, causally related). *See also*

retaliation claim.

### 3.  Hostile Work Environment

Next, Plaintiff asserts a hostile work environment claim.[36] Under Title VII, a plaintiff

establishes a *prima facie* case of hostile work environment based on religion by demonstrating

the following five elements: (1) that he was a member of a protected class; (2) that he was

subjected to unwelcome religious harassment; (3) that the harassment was based on religion;

(4) that the harassment had the effect of unreasonably interfering with the plaintiff's work

performance by creating an intimidating, hostile, or offensive work environment; and (5) that

the employer was liable for the harassment.[37]  The Plaintiff alleges that be was subjected to a

hostile work environment by being made to feel inferior, being subjected to intense scrutiny,

and working under the constant threat of termination.[38]

In a hostile work-environment claim, the harassment must include conduct based on

Plaintiff's protected status (religion) that is sufficiently severe or pervasive so that a

reasonable person would find the environment hostile and abusive in light of all the

circumstances.[39]  Moreover, Plaintiff must produce evidence that the conduct had a "religious

---

*Gagnon v. Sprint Corp.*, 284 F.3d 839, 851–52 (8th Cir. 2002) (noting that a one-month lapse between the protected activity and the retaliatory act is insufficient to support a causal link alone).

[36]Doc. No. 1, ¶ 8 (b).

[37]*Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). *See also Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030 (8th Cir. 2005).

[38]Plaintiff Ex. 7, Declaration of Phillip Wilson.

[39]*Peterson v. Scott County*, 406 F.3d 515 (8th Cir. 2005).

character or purpose."[40]   The comments and behavior must be facially discriminatory and

apparently motivated by religious animus. The Plaintiff must show that the alleged

discriminatory conduct was not "merely tinged with remarks abhorrent to his religion, but

actually was, in either character or substance, because of religion."[41]   In other words, Plaintiff

must show that his supervisor harassed him *because* of his Christian/Baptist faith. In this case,

Defendant did not display open hostility to the Baptist religion.  For example, Plaintiff was

not subjected to derogatory remarks about his religion,[42] or to any proselytizing.[43]  In view of

this, Plaintiff fails to show that he was subjected to a "religiously" hostile work environment.

Even if the alleged misconduct was motivated by religious prejudice (which is not

shown by the record), two empty threats of termination within three years does not rise to the

level of an objectively abusive work environment; and Plaintiff cannot rely on the conclusory

statements in his affidavit to raise a genuine issue for trial.[44]

### 4.  Failure to Accommodate

Finally, Plaintiff claims that Wal-Mart refused to accommodate his religious beliefs.

---

[40]*Cook v. Cub Foods, Inc.* 99 F. Supp.2d 945, 948 (N.D. Ill. 2000); *Shanoff v. Illionois Department of Human Services*, 258 F.3d 696, 704 (7th Cir. 2001); *Equal Employment Opportunity Commission v. University of Chicago Hospitals*, 276 F.3d 326 (2002); *Rivera v. Puerto Rico Aqueduct and Sewers Authority*, 331 F.3d 183 (1st Cir. 2003).

[41]*Rivera*, 331 F.3d 189.

[42]*Shanoff,* 258 F.3d at 704 (hostile work-environment found where supervisor constantly referred to Plaintiff as a "Jew[ish] male" and told him that she hated everything that he was); *Durant v. NYNEX*, 101 F. Supp. 2d 227 (S.D.N.Y. 2000)(rejected hostile work environment claim because there were no charges that anyone in workplace made profane comments about Plaintiff's faith, coerced her into religious activity or insulted her religion)

[43]*Tillery v. ATSI, Inc.*, 242 F. Supp.2d 1051 (N.D. Ala. 2003) (hostile work-environment where supervisor repeatedly attempted to convert Plaintiff to the Catholic religion)).

[44]*Jeseritz v. Potter,* 282 F.3d 542, 545 (8th Cir. 2002).

An employee establishes a *prima facie* case of discrimination based on a failure to accommodate by showing that: (1) the employee has a bona fide religious belief that conflicts with an employment requirement; (2) the employee informed the employer of this belief; (3) the employee was disciplined for failing to comply with the conflicting employment requirement.[45]  An employer is required to reasonably accommodate the religious beliefs and practices of their employees unless such an accommodation would cause the employer unreasonable hardship.[46]

Defendant does not contend that Plaintiff's belief about Sunday work are insincere. However, there is no evidence that Plaintiff was disciplined for failing to comply with the Sunday work requirement.   Plaintiff offers evidence of two incidents where Defendant issued ultimatums to him about Sunday -- in 1999 Plaintiff was told that he would have to start working Sunday in order to keep his job, and in 2003 he was given two weeks to agree to Sunday work, or face termination.[47]  These turned out to be empty threats.  Since1999, Plaintiff has not worked even one Sunday, he continues to be employed as a manager, and he received above average evaluations with yearly salary increases.

Since the issue arose, Defendant allowed Plaintiff to schedule other workers to take his place.  In *Trans World Airlines, Inc. v. Hardison,*[48] the Supreme Court found that substituting workers was not only reasonable, but tended to favor employees with strong religious beliefs over non-believers who also had strong reasons for not working on the weekend.   In addition to allowing Plaintiff to find workers to work the Sunday shift,

---

[45]*Wilson v. U.S. West Communications*, 58 F.3d 1337 (8th Cir. 1995).

[46]*Trans World Airlines, Inc. v Hardison*, 432 U.S. 63, 74-75 (1986).

[47]Plaintiff Ex. 7, Declaration of Phillip Wilson, ¶ 4, ¶ 13.

[48]432 U.S. at 81.

Defendant also offered to transfer him to a location that is not open on Sunday.

Plaintiff rejects this as unreasonable, and alleges that he is entitled to a guarantee that he would never be required to work Sunday. According to the opinion in *Hardison*, such ironclad assurances are not contemplated by Title VII, because it would unfairly affect non-religious employees. "It would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far."[49] The Defendant is required to make its best efforts to avoid forcing Plaintiff to work on Sunday. While an employer is not required to make guarantees, an absolute lack of effort violates Title VII.[50]

Title VII contemplates give and take. Both parties are expected to cooperate with one another to reach an accommodation. Allowing the employee to trade shifts has specifically been found to be a "reasonable" accommodation.[51] Trading shifts and lateral transfers are methods of accommodation that are recommended by the EEOC regulations.[52] Both methods of accommodation have been used or suggested by Defendant. While Defendant is not wholly "without sin," after all is said and done, it allowed Plaintiff to find voluntary substitute workers. Unlike the Defendant in *E.E.O.C. v. Ithaca,*[53] this Defendant continues to make efforts to accommodate Plaintiff's religious beliefs.

---

[49]*Id*. at 80-81.

[50]*E.E.O.C. v. Ithaca Industries*, *Inc.*, 849 F.2d 116 (4th Cir. 1988).

[51]*Brenner v. Diagnostic Center Hospital*, 671 F.2d 141 (5th Cir. 1982); *United States v. City of Albuguerque*, 545 F.2d 110 (10th Cir. 1976).

[52]29 C.F.R. § 1605.2

[53]849 F.2d 116; *See also McCarter v. Lowe's Home Centers, Inc.*, No. 3:04CV55-MU, 2005 WL 1871158 (W.D.N.C. July 29, 2005).

Based on the above, Plaintiff has failed to produce sufficient evidence to create a genuine issue of dispute on his claims of discrimination.   The Motion for Summary Judgment is GRANTED.  All other pending Motions are DENIED as MOOT.

IT IS SO ORDERED. DATED this 9th day of February, 2006.


/s/ Wm. R.Wilson,Jr.
UNITED STATES DISTRICT JUDGE